IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

STUART DELANCEY,

    Petitioner,

v.                                                          CASE NO. 1:12-cv-216-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. 1. After being transferred to this Court from the Middle District of Florida, Respondent filed a response and an appendix with the state-court record. Doc. 20. Petitioner filed a reply. Doc. 22. Upon due consideration of the Petition, the response, the state-court record, and the reply, the undersigned recommends that the Petition be denied.[1]

### Summary of State Court Proceedings

In November of 2010, Petitioner was charged by Information with one count of trafficking illegal drugs; one count of possession with intent to sell cannabis; one count of possession with intent to use drug paraphernalia; and one count of maintaining a vehicle where drugs are kept or sold. Doc. 20-1 at 54-55. On July 25, 2011, Petitioner's counsel filed a motion to dismiss his charges, arguing that law enforcement

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

had objectively entrapped him into committing the charged offenses. The motion asserted that the confidential source (CS) in this case identified Petitioner as a supplier of narcotics, and had extensive contact with him, and Petitioner had no previous criminal history. Doc. 20-1 at 76-78. Defense counsel also filed a motion to dismiss on the grounds that Fla. Stat. § 893.13 is facially unconstitutional, which was denied. Doc. 20-1 at 87-88; 265-66.

A hearing was held on the motion to dismiss based on entrapment on November 16, 2011. Petitioner testified at the hearing that he was having problems with his car, and the CS offered to help him fix his car in exchange for obtaining pills for the CS. Petitioner testified that he was trying to help the CS obtain pills because he was his friend, and he needed the pills to pay a debt. Petitioner then arranged for a man named "Papa J" to bring the pills to the CS's residence. However, at the last minute the CS called and told Petitioner the he was not comfortable with Papa J coming to his home, and wanted Petitioner to bring the drugs instead. Petitioner testified that he did as the CS asked because he was trying to help his friend, and because he needed to get his car fixed.

The CS testified that he agreed to cooperate with law enforcement after selling drugs to an undercover agent. Because Petitioner previously had sold pills to the CS the CS arranged a buy-bust involving Petitioner. Petitioner called the CS and told him that had some pills that he wanted to sell. The CS stated that law enforcement did not advise him of the quantity of drugs he would purchase in the controlled buy. Further, the CS did not personally tell Petitioner to bring a certain quantity of pills. Rather, Petitioner was simply attempting to sell the remaining pills in his possession.

Detective Adam Delker also testified.  He stated that the CS previously had purchased pills from Petitioner. The CS never told Detective Delker who was Petitioner's supplier.  If Detective Delker had been supplied with that information, he testified that he would have preferred to go after the supplier's supplier because he would have been a bigger target.  Detective Delker testified that the CS's controlled buy-bust would have to involve a drug quantity equal to or greater than 200 pills, the amount of drugs involved in the CS's own charges, to receive substantial assistance. Detective Delker testified that the CS identified more than one potential target of the operation, but it was the CS's choice ultimately who to target.  Prior to his arrest, there was no surveillance of Petitioner.  Detective Delker testified that in the "confidential source packet" that a confidential source would sign, the entrapment statute is listed. The CS signed the paperwork with his attorney present, so it would have been discussed with him.  Detective Delker noted that the statute is generally broken down into layman's terms, "such as not to make someone do something that they would not normally do or try to coerce something they would not normally do."

The court denied Defendant's motion in a ruling from the bench, holding that the state's conduct did not come close to being egregious or outrageous, the standard for objective entrapment.  The court also said that the CS was a young man "who I'm not sure has the capability of persuading anybody to do anything in particular, based upon his in-court appearance, and I'm not persuaded that he could have gotten Mr. Delancey to do anything he didn't want to do."  The court also noted that there were inconsistencies in Petitioner's testimony and the evidence.  For example, Petitioner's stated that he needed money to fix his car, yet he was arrested with $900 in addition to

the buy money on his person. There were also 92 grams of cannabis found in his vehicle at the time of arrest, along with scales, thus evidencing drug trafficking activity.

Petitioner's attorney told the Court that Petitioner could enter a plea and preserve his right to appeal the Court's decision denying his motion to dismiss. Petitioner's attorney also noted that Petitioner could still present a subjective entrapment defense at trial. The government offered a negotiated plea deal to a lesser included offense on count I, with ten years imprisonment and five years probation on the record. Petitioner's attorney on the record advised Petitioner to take the plea offer. The Court advised Petitioner that if he did not take the deal, he would be subject to a twenty-five year minimum sentence if he was convicted at trial. Petitioner did not enter a plea at that time because he needed more time to think about it. Doc. 20-1 at 157-243; Doc. 20-1 at 246-253.

Some time later, Petitioner decided to enter a plea of *nolo contendere* on count I to the lesser included offense of "level seven trafficking," and *nolo contendere* to the other three charges. Doc. 20-1 at 110-14; 263. Petitioner preserved his right to appeal the denial of both his motions to dismiss. Doc. 20-1 at 260. Petitioner was adjudicated guilty and sentenced to ten years in prison followed by five years probation on Count I; five years imprisonment on Count II, and 364 days in jail on both Counts III and IV, all to run concurrently. Doc. 20-1 at 115-20. Petitioner filed a motion for modification of his sentence, which was denied on December 6, 2011. Doc. 20-1 at 144.

Petitioner appealed, and the only issue he raised was that the statute under which he was convicted was unconstitutional. Doc. 20-1 at 272-283. The Florida First District Court of Appeal (DCA) affirmed, *per curiam*, the convictions and sentences on

April 19, 2012. Doc. 20-1 at 303.  Mandate issued May 7, 2012.  Doc. 20-1 at 304.  Petitioner sought review in the Florida Supreme Court, but his case was dismissed on November 9, 2012, for lack of jurisdiction.  Doc. 20-1 at 306.  Petitioner next sought review in the Supreme Court of the United States, which denied his petition for writ of certiorari.  Doc. 20-1 at 309-21; 369, 371.

Petitioner then filed a state petition for writ of habeas corpus in the First DCA on June 8, 2012, arguing ineffective assistance of appellate counsel for failure to raise objective entrapment--the subject of the motion to dismiss--in his appeal.  Doc. 20-1 at 373-81.  The petition was denied "on the merits" without opinion by the First DCA.  Doc. 20-1 at 387.  Petitioner filed a motion for rehearing and motion for written opinion, both of which were denied on August 10, 2012.  Doc. 20-1 at 389.

Petitioner filed the instant petition for federal habeas relief on September 15, 2012.  Doc. 1.

## Section 2254 Standard of Review and
## Standard of Review for Ineffective Assistance Claims

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by

clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow*, ___ U.S. ___, 2013 WL 5904117, *4 (2013) (quoting  *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential").  This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Id*.  This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'"  *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976).

In view of the deference afforded to the state courts' adjudication of

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.  AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).  "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'"  *Id*. (quoting *Harrington*, 131 S.Ct. at 786).  "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

    Because Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland*'s prejudice and performance prongs is appropriate.  *Strickland*, 466 U.S. at 686*; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).  With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.  *Strickland*, 466 U.S. at 689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a

deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." *Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

The Eleventh Circuit has recognized that given these principles and presumptions "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 n.15 (11th Cir. 2000) (en banc). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).

## DISCUSSION

### Ground 1: Shelton Claim

Relying upon *Shelton v. Secretary, Department of Corrections*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011) Petitioner contends that Fla. Stat. § 893 is unconstitutional.

Petitioner's claim is foreclosed by the Eleventh Circuit's decision in *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012), which reversed the decision of the trial court.

By way of background, following Florida Supreme Court cases holding that the State was required to prove *mens rea* in controlled-substance cases, and that the requisite *mens rea* includes both knowledge of the presence of the controlled substance as well as knowledge of its illicit nature, the Florida legislature enacted Fla. Stat. § 893.101, amending the Drug Abuse Prevention and Control Act.  The amendment expressly provided that knowledge of the illicit nature of the controlled substance was not an element of the offense, and created an affirmative defense of lack of knowledge of the illicit nature of the substance.  The statute did not eliminate the element of knowledge of the presence of the substance.  "In short, the amendment did not completely eliminate *mens rea* for Florida drug crimes: it converted one aspect of *mens rea* from an element of the crime into an affirmative defense."  *Shelton*, 691 F.3d at 1350-51.

The Florida Supreme Court upheld the constitutionality of the amendment in *State v. Adkins*, 96 So.3d 412  (Fla. 2012).  In *Adkins*, the Florida Supreme Court examined the history of criminal statutes that omitted a scienter requirement and were nonetheless constitutional as compared to those statutes where the lack of scienter rendered them unconstitutional. The court explained that § 893.101 fell within the former because 1) it punished an affirmative act—possessing or delivering controlled substances—rather than merely a passive activity, such as simply being a felon present in a city more than five days; and 2) the provision did not threaten to chill otherwise protected activities.

In *Shelton*, the Eleventh Circuit reviewed habeas claims in which the petitioner challenged the constitutionality of Florida's drug statutes.  The Court held that *Adkins*

was not an unreasonable application of federal law.  The Eleventh Circuit in *Shelton* concluded that the district court had failed to give the proper deference under the AEDPA to the state courts' adjudication of the issue.  Specifically, the Eleventh Circuit held that the Florida Supreme Court's adjudication of the facial constitutionality of § 893.101 on the merits in *Adkins* was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." *Shelton*, 691 F.3d at 1355.  The Eleventh Circuit's decision in *Shelton*, therefore, is binding upon this Court.  Accordingly, Petitioner's claim is without merit.

### *Ground 2: Petitioner's Appellate Counsel Was Not Constitutionally Deficient for Failing to Raise the Objective Entrapment Defense*

Petitioner contends that his appellate counsel was ineffective for failing to raise the objective entrapment defense on appeal.  Petitioner raised this claim in his state habeas petition, which was denied "on the merits" by the First DCA without written opinion.

To prevail on this claim, Petitioner must first show that appellate counsel was objectively unreasonable in not raising the omitted issue. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).  The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting a particular argument. *Smith*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")).  In assessing appellate counsel's performance, "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Heath v.*

*Jones*, 941F.2d 1126, 1130 (11th Cir. 1991). Rather, "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious." *Id*. at 1131. When appellate counsel reviews the entire record, thinks about various claims, and then chooses to pursue only certain issues on appeal, counsel has not rendered ineffective assistance. *Id*. Although a non-appealed issue might have been successful if it had been raised, appellate advocacy must be "judged in its entirety." *Id*.

To determine prejudice in the context of appellate counsel's effectiveness, the Court must review the merits of the neglected claim or claims. *Heath*, 941 F.2d at 1132. Failure to raise a claim will not be found prejudicial unless the claim would have a reasonable probability of success on appeal. *Id*.

In ruling on the motion to dismiss, the trial judge concluded that the state's conduct was not egregious or outrageous and thus failed to meet the standard for objective entrapment. Doc. 20-1 at 239. The state court also determined that the CS was not capable of persuading anyone to do anything. Doc. 20-1 at 240. The state court went on to note that the calls organizing the controlled buy were monitored and some were recorded. Based on this evidence the state court determined that Petitioner was not pressured or badgered into entering into the deal. In light of these facts as determined by the state court, any appeal based on the denial of Petitioner's motion to dismiss would have been futile.

Petitioner wrote to his appellate counsel and inquired why the entrapment defense had been omitted from his appeal. Appellate counsel wrote back and advised Petitioner that "[b]ased on my research of the applicable law, I was not able to make an argument on the entrapment issue which was presented to the trial court. Therefore,

that issue was not raised in your appeal." Doc. 20-1 at 382.  In short, Petitioner's counsel cannot be deemed deficient for failing to make a meritless argument on appeal, nor can Petitioner show prejudice because of the failure to make this argument on appeal.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 131 S.Ct. at 785.

The trial court, in denying Petitioner's motion based on objective entrapment, made findings of fact and witness credibility.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  Likewise, the state court's findings as to witness credibility are presumptively correct.  *See Brown v. Head*, 272 F.3d 1308, 1314 (11th Cir. 2001).

In this case the trial judge was in the best position to determine whether the facts gave rise to an objective entrapment defense. Petitioner has not demonstrated by clear and convincing evidence that the presumption of correctness should be rebutted.  A state court's summary rejection of a constitutional claim, such as the First DCA's in this case, qualifies as an adjudication on the merits that is entitled to deference under § 2254(d).  Therefore, the Court will not second-guess the state court's decision unless Petitioner provides clear and convincing evidence to do so.  The First DCA denied the

claim that Petitioner's appellate counsel was ineffective for failing to raise the defense of objective entrapment. This Court, therefore, must presume that finding to be correct, and Petitioner has offered nothing to rebut that presumption.

Accordingly, on this record, and in view of the deference afforded to the state court's rejection of this ineffective-assistance claim on the merits, the Court concludes that Petitioner has failed to show that he is entitled to federal habeas corpus relief.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. The Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By a Person in State Custody, Doc. 1, should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS** in Gainesville, Florida this 15th day of June, 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.